UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HONGJIN SUI and DALIAN HOFFEN
BIO-TECHNIQUE CO., LTD.,

      Plaintiffs,

v.                                     CASE NO: 8:11-cv-37-T-23TBM

HARRY WU, and THE LAOGAI
RESEARCH FOUNDATION,

      Defendants.

_____/

## <u>ORDER</u>

      The plaintiffs sued (Doc. 2) in state court for damages and an injunction based on alleged defamation, libel, slander, and tortious interference with a business relationship. The defendants remove (Doc. 1) and assert jurisdiction under 28 U.S.C. § 1332. The defendants move (Doc. 18) to dismiss, and the plaintiffs respond (Doc. 21) in opposition. Additionally, the plaintiffs move (Doc. 22) to strike the affidavit (Doc. 19) of Harry Wu (filed in support of dismissal), and the defendants respond (Doc. 25) in opposition.

<u>Allegations of the Complaint</u>

      Dr. Hongjin Sui is a doctor of anatomy and resides in China. Sui and Dalian Hoffen Bio-Technique Co. ("Dalian Hoffen"), a Chinese corporation, preserve biotic

specimens—including human bodies and organs—through plastination.[*]  In addition to plastination research, Sui and Dalian Hoffen produce and display for profit plastinated human bodies and organs.  The defendant Harry Wu resides in Vienna, Virginia, and directs the Washington, D.C.-based Laogai Research Foundation (the "Foundation"), which raises public awareness of human rights issues in China's system of forced-labor prison camps (i.e., the Laogai).  The Foundation utilizes an interactive web site, www.laogai.org (the "web site"), for both fundraising and disseminating information worldwide.  According to the complaint, the Foundation solicits donations from people throughout the world.

Between 2005 and 2008, Premier Exhibitions ("Premier") exhibited "Bodies . . . The Exhibition"—featuring plastinated human bodies created and sold by the plaintiffs—at the Museum of Science and Industry in Tampa, Florida, and at museums in both Miami and Ft. Lauderdale, Florida.  In 2009, Wu traveled to Hawaii to protest the plaintiffs' anticipated exhibition and to seek a prohibition on the display in Hawaii of human bodies and organs.  Wu testified before the Hawaii legislature and in 2010 published his testimony on the web site.  While in Hawaii in 2009, Wu allegedly stated falsely (1) that the plaintiffs trafficked in human bodies; (2) that the plaintiffs "acquired bodies from an illicit body trade and from [a] secret witness"; and (3) that the "secret witness" supplied Sui with more than a hundred cadavers.  Additionally, Wu "both on the . . . web site and at numerous public talks" stated that the bodies in the

---

[*] Plastination preserves anatomical material through a process that typically uses acetone to replace the tissue's water and fat with silicone.  After plastination, the tissue is safe, odorless, durable, and not susceptible to deterioration.  See http://www.med.umich.edu/anatomy/plastinate/

exhibition were executed Chinese prisoners.  Wu repeated the statements in Pennsylvania and cited in support of his claim a February 15, 2008, broadcast on ABC's 20/20 investigative news program.  In his July, 2010, article (which cites the 20/20 broadcast also) (Doc. 14-3), Wu asserted (1) that Sui "plagiarized" his plastination technique; (2) that no prisoner genuinely and voluntarily consented to plastination and display; (3) that the Chinese regime profits from the bodies of prisoners by illicitly harvesting organs and plastinating and selling the bodies for display; and (4) that nine photographs display purported "body donors," whose hands are bound and whose heads each contain an execution-style bullet wound.  When the plaintiffs attempted in 2010 to display the exhibition in Missouri, Wu opposed the exhibition.

The plaintiffs assert (1) that each of the statements is false, (2) that the plaintiffs never trafficked in human bodies, (3) that Wu conducted no due diligence to investigate the truth of the statements, (4) that Wu possesses no proof of the statements' veracity, (5) that Wu knows that the "secret witness" admitted to never delivering bodies to the plaintiffs, and (6) that Wu possesses knowledge of the falsity.  Despite the plaintiffs' demanding both an apology and a retraction in July, 2010, Wu refuses to either retract or amend the statements on the web site.  Therefore, the plaintiffs sue for defamation, libel, slander, and tortious interference and allege (1) that Wu's statements—which "were intentional, . . . with malice[,] and . . . with reckless disregard for the truth"—caused "irreparable damage to the[] [plaintiffs'] business and reputation"; (2) that Wu's statements caused Premier to decline at least three "contract options" to exhibit the plaintiffs' specimens; and (3) that the continued posting of Wu's July, 2010, article

constitutes a "continuing tort" that merits an injunction.  The plaintiffs demand (1) "actual

damages for injury to their reputation and business"; (2) "damages in tort for injury to

their business relations"; (3) a permanent injunction, retraction of false statements, and

removal of the nine photographs from the web site; and (4) attorney's fees.

Discussion

*1. Motion to Strike Wu's Affidavit*

In moving (Doc. 22) to strike Wu's affidavit (Doc. 19), the plaintiffs argue (1) that

the affidavit neither contains a statement affirming that the affidavit derives from

personal knowledge nor otherwise demonstrates that the affirmations in the affidavit

derive from personal knowledge and (2) that the affidavit contains an impermissible

legal conclusion.  In response, the defendants assert (1) that an affidavit need not

contain an attestation of "personal knowledge," especially if the information inherently

and obviously derives from personal knowledge, and (2) that Wu's statement denying

that Wu conducted business in Florida is offered as a negation and, therefore, admits of

no factual support.

In his one-page affidavit, (Doc. 19) Wu asserts that he maintains neither property,

nor a permanent residence, nor voter registration, nor a drivers license in Florida.

Additionally, Wu states that he traveled to Florida once to visit Disney World and that he

has never conducted business in Florida either for himself or for the Foundation.  A

person's first-hand statement of what that person has or has not done, where that

person has or has not been, and what he does or does not possess are quintessentially

statements of personal knowledge, to which a formal confirmation of the obvious adds nothing.

### 2. Personal Jurisdiction

The defendants assert the absence of personal jurisdiction under the Florida long-arm statute, Section 48.193, Florida Statutes, and argue that applying the long-arm statute violates the defendants' right to due process under the U.S. Constitution.  In response, the plaintiffs assert that both the long-arm statute and the Due Process Clause support personal jurisdiction in Florida.

A determination as to personal jurisdiction requires an analysis (1) of whether the state long-arm statute authorizes personal jurisdiction and (2) of whether the defendant possesses "minimum contacts" with the forum state sufficient to comport with "'traditional notions of fair play and substantial justice.'"  Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1166-67 (11th Cir. 2005) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

### a. Section 48.193, Florida Statutes

Section 48.193 provides that:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> . . .
>
> (b) Committing a tortious act within this state.

Under Section 48.193(1)(b), a non-resident defendant who allegedly commits a tort is amenable to personal jurisdiction in Florida if the alleged tort causes an injury in Florida. Pathman v. Grey Flannel Auctions, Inc., 741 F. Supp. 2d 1318, 1324 (S.D. Fla. 2010) (King, J.). "[T]he alleged tortfeasor's 'physical presence [in Florida] is not required.'" Horizon, 421 F.3d at 1168 (quoting Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002)). Thus, Section 48.193(1)(b) applies "to defendants committing tortious acts outside the state that cause injury in Florida." Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1217 (11th Cir. 1999). A defendant's "'telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction . . . if the alleged cause of action arises from the communications.'" Acquadro v. Bergeron, 851 So. 2d 665, 670-71 (Fla. 2003) (quoting Wendt, 822 So. 2d at 1260). Furthermore, the posting on a web site of allegedly defamatory material about a Florida resident, which material is both "accessible in Florida and accessed in Florida," constitutes a tortious act sufficient to support personal jurisdiction under Section 48.193(1)(b). Internet Solutions Corp. v. Marshall, 611 F.3d 1368, 1370-71 (11th Cir. 2010) (citing Internet Solutions Corp. v. Marshall, 39 So. 3d 1201 (Fla. 2010) ("Internet Solutions") (finding that "[b]y posting allegedly defamatory material on the [w]eb about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida.").

In Internet Solutions, a corporation with a principal place of business in Orlando, Florida, sued Tabatha Marshall, a resident of Washington, based on material that Marshall posted on her web site. The material identified the corporation (along with the

corporation's address) as an affiliate of a fraudulent and criminal enterprise.  The

material received several comments, some of which originated in Florida from Florida

residents.  The corporation alleged that the material contained defamatory statements

and that Marshall published the material with the intent to harm the corporation's

reputation.  Internet Solutions concludes that "allegedly defamatory material about a

Florida resident placed on the Web and accessible in Florida constitutes an 'electronic

communication into Florida' when the material is accessed (or 'published') in Florida."

Internet Solutions leaves undecided (1) "the broader issue of whether injury alone

satisfies the requirement of Section 48.193(1)(b)" and (2) "the issue of whether

exercising jurisdiction over Marshall would violate due process."  Additionally, Internet

Solutions notes that "the issues of whether Marshall targeted a Florida resident, whether

Marshall purposefully directed her post at Florida, or whether Marshall's web site is

"active" or "passive" could be properly considered in the due process analysis."

       In moving to dismiss, the defendants argue that the plaintiffs cannot assert

personal jurisdiction under Section 48.193(1)(b) (1) because the plaintiffs are not Florida

residents, the defendants are not Florida residents, and no harm occurred in Florida; (2)

because Internet Solutions applies only if the plaintiff resides in Florida and an injury

occurs in Florida; (3) because Hawaii is the only state in which an injury occurred

(through Hawaii's banning the exhibition of human bodies); (4) because the alleged

defamatory statements occurred after the plaintiffs' exhibitions in Florida and, therefore,

could not have harmed the plaintiffs in Florida; and (5) because the interactive nature of

the web site (i.e., the ability of a visitor to donate, purchase books, and enroll in

automatic updates) bears no relation to the plaintiffs' claims of defamation and tortious interference.  In response, the plaintiffs rely on <u>Internet Solutions</u> and argue (1) that, even though neither plaintiff maintains a residence or principal place of business in Florida, Sui's "longstanding business relationship" with Florida supports jurisdiction under Section 48.193(1)(b); (2) that the proper analysis is whether the plaintiffs possess a "logical nexus" to the forum state; and (3) that personal jurisdiction under Section 48.193(1)(b) depends primarily upon the defendants' connection to Florida and not upon the plaintiffs' connection to Florida.

In this instance, Wu and the Foundation published allegedly defamatory statements about the plaintiffs on a web site, both accessible in Florida and accessed (i.e., "published") in Florida.  In publishing the statements, the defendants allegedly acted with malice and an intent to harm the plaintiffs' reputation throughout the United States (i.e., pointedly in each forum in which the plaintiffs' specimens arrive for display). The plaintiffs—who sell specimens for exhibition in Florida—allege an injury to the plaintiffs' reputation in Florida.  Under <u>Posner</u> and <u>Internet Solutions</u>, the defendants' allegedly intentional, tortious conduct (which caused harm in Florida) provides a sufficient basis for asserting jurisdiction under Section 48.193(1)(b).

b. Due Process & Minimum Contacts

In addition to personal jurisdiction under Section 48.193, the plaintiffs must show that the defendants possess "minimum contacts" with Florida sufficient to comport with "'traditional notions of fair play and substantial justice.'"  <u>New Lenox Indus., Inc. v.</u>

Fenton, 510 F. Supp. 2d 893, 903-04 (M.D. Fla. 2007) (Hodges, J.) (quoting Int'l Shoe,

326 U.S. at 326).

> Jurisdiction may be constitutionally asserted over the nonresident
> defendant whenever he has by his own purposeful conduct created a
> "substantial connection" with the forum state.  The Court has made
> clear, however, that "[s]o long as it creates a 'substantial connection'
> with the forum, even a single act can support jurisdiction."
> Intentional torts are such acts, and may support the exercise of
> personal jurisdiction over the nonresident defendant who has no
> other contacts with the forum.

Licciardello v. Lovelady, 544 F.3d 1280, 1285 (11th Cir. 2008).  "In other words,

personal jurisdiction over defendants may be based on the 'effects' of their conduct."

Vision Media TV Group, LLC v. Forte, 724 F. Supp. 2d 1260, 1265 (S.D. Fla. 2010)

(Marra, J.) (citing Calder v. Jones, 465 U.S. 783, 789 (1984)).  Accordingly, if "a

defendant's tortious conduct is intentionally and purposefully directed at a resident of

the forum, the minimum contacts requirement is met, and the defendant should

anticipate being haled into court in that forum."  Fenton, 510 F. Supp. 2d at 904;

Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC, 2009 WL 3822773 (M.D. Fla.

2009).

    In this instance, Wu possesses neither Florida property, Florida residency, Florida

voter registration, nor a Florida drivers license.  Wu and the Foundation conduct no

business in Florida, and Wu has traveled to Florida once (for a vacation).  However, Wu

posted on the Foundation's web site statements expressly aimed at Sui and Dalian

Hoffen and the exhibition.  Wu intended (through publication of the statements) to

impact the plaintiffs in every state in which the plaintiffs display the specimens.  In

publishing the statements on the web site, Wu undoubtedly intended to reach a vast

audience, including internet users in Florida.  Although neither Sui nor Dalian Hoffen

reside in Florida, the plaintiffs possess a reputation in Florida and conduct business in

Florida.  Wu's statements allegedly detrimentally affected the plaintiffs' reputation in

Florida.  Under <u>Licciardello</u>, Wu's alleged intentional, tortious conduct, which Wu

purposefully directed at the plaintiffs and which allegedly caused irreparable injury to the

plaintiffs in Florida, establishes the defendants' "minimum contacts" with Florida.

Florida possesses a substantial interest in adjudicating a dispute over alleged conduct

that purportedly caused an injury within the state.  The plaintiffs need not travel to the

defendants' state of residence in order to obtain a remedy.  <u>See</u> <u>Calder</u>, 465 U.S. at

790.

### 3. Failure to State a Claim

The defendants assert (1) that the alleged falsity of Wu's statements is a legal

conclusion devoid of factual support; (2) that Wu's statements to the Hawaii and

Pennsylvania legislatures are "absolutely privileged" under both Hawaii and

Pennsylvania law; (3) that the applicable limitation bars a defamation claim arising from

Wu's article (published in "Observechina" in 2008, according to the defendants); (4) that

the plaintiffs fail to show "actual malice" as required with statements involving "limited-

purpose public figures" and a public controversy; and (5) that the plaintiffs can prove

neither the truth nor the falsity of the allegedly defamatory statements.  In response, the

plaintiffs argue (1) that the amended complaint comports with the pleading requirement

in Rule 8, Federal Rules of Civil Procedure, and (2) that the issues raised by the

defendants "are more appropriate for a later stage of this litigation, after discovery has taken place."

To state a claim for defamation, a plaintiff must allege facts showing "(1) publication; (2) falsity; (3) . . . knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) [a] [defamatory] statement . . . ." Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008).  "'A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"  Thomas v. Jacksonville Television, Inc., 699 So. 2d 800, 803 (Fla. 1st DCA 1997).  Additionally:

> a publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.' When words and pictures are presented together, each is an important element of what, in toto, constitutes the publication. Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines.

Byrd v. Hustler Magazine, Inc., 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (citations omitted).  In Florida, legislative testimony receives the protection of either absolute or qualified privilege, depending on the testimony's relevance and pertinence to the "subject of inquiry".  Fiore v. Rogero, 144 So. 2d 99, 102 (Fla. 2d DCA 1962).  Proof of "malice" renders a qualifiedly privileged statement actionable.  144 So. 2d at 103 (explaining that if "facts are controverted" and the parties present "evidence upon the subject," malice "is a question for the jury").  The applicable limitation for a defamation claim is two years.  Fla. Stat. § 95.11(4).

- 11 -

To state a claim for tortious interference, a plaintiff must show "'(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship.'" Bortell v. White Mountains Ins. Group, Ltd., 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009) (quoting N. Am. Van Lines, Inc. v. Ferguson Transp., Inc., 639 So. 2d 32, 33 (Fla. 4th DCA 1994)).  "This cause of action requires 'a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'" 2 So. 3d at 1048 (quoting Ethan Allen Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 815 (Fla. 1994)).

At this stage of the action, the plaintiffs present sufficient factual allegations to state a claim both for defamation and for tortious interference.  As to the defamation claim, the plaintiffs allege (1) publication on the web site and elsewhere; (2) falsity, based on the alleged absence of proof and the alleged denials by both Sui and the "secret witness"; (3) reckless disregard or negligence as to the truth, based on Wu's alleged failure to investigate; (4) actual damages, based on damage to the plaintiffs' business and reputation; and (5) a defamatory statement, e.g., that the plaintiffs trafficked in human bodies.  To the extent that the defamation claim arises from the July, 2010, article (Doc. 14-3), the claim is timely.  Furthermore, as to the tortious interference claim, the plaintiffs sufficiently allege (1) an existing business relationship with Premier, (2) the defendants' knowledge of the relationship between the plaintiffs

and Premier, (3) intentional interference (through allegedly defamatory statements about the plaintiffs and public opposition to the exhibition) with the relationship between the plaintiffs and Premier, and (4) damage sustained by the plaintiffs through Premier's declining several contract options.

Apparently, subject to a heightened burden of proof, Florida permits injunctive relief in certain acute instances of defamation. Murtagh v. Hurley, 40 So. 3d 62 (Fla. 2d DCA 2010). However, an injunction against speech is highly problematic. See Tory v. Cochran, 544 U.S. 734 (2005); e360 Insight v. The Sphamhaus Project, 500 F.3d 594 (7th Cir. 2007); Balboa Island Village Inn, Inc. v. Lemen, 156 P.3d 339 (Cal. 2007); Erwin Chemerinksy, Injunctions in Defamation Cases, 57 SYRACUSE L. REV. 157 (2007). An assessment of the availability of injunctive relief in this instance requires a mature record and thorough briefing. The issue is deferred.

Conclusion

Accordingly, the plaintiffs' motion (Doc. 22) to strike is **DENIED**, the defendants' motion (Doc. 18) to dismiss is **DENIED**, and the motion (Doc. 30) to stay discovery pending a decision on the motion to dismiss is **DENIED AS MOOT**.

ORDERED in Tampa, Florida, on April 13, 2011.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE